**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Bonnie R.,[1]

Plaintiff,

v.

Frank Bisignano,
Acting Commissioner of Social Security,

Defendant.

Case No. 25-cv-4498 (SGE)

**ORDER**

This matter is before the Court and under its jurisdiction pursuant to 42 U.S.C. §405(g). On appeal, Plaintiff Bonnie R. seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties consented to the disposition of the present case by the undersigned Magistrate Judge under 28 U.S.C. §636(c). Both Ms. R and the Commissioner have fully briefed their positions, and this matter is now ripe for review. (Dkts. 14, 21, 25.) For the reasons below, the Court denies Ms. R's request for relief and grants the Commissioner's request for relief.

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Thus, when the Court refers to Plaintiff by her name, only her first name and last initial are provided.

## **BACKGROUND**

Ms. R applied for DIB under Title II and SSI under Title XVI on March 22, 2024, alleging a disability onset date of December 31, 2021. (Admin. R. at 280–301.) Ms. R's claims were initially denied on August 12, 2024, and upon reconsideration on November 27, 2024. (*Id.* at 172–177, 201–04.) Ms. R then requested that an ALJ review the denials. (*Id.* at 233–35.) On June 3, 2025, the ALJ held an administrative hearing at which Ms. R, accompanied by counsel, and an independent vocational expert ("VE") testified. (*Id.* at 72–123.) The ALJ issued a decision on August 18, 2025, denying Ms. R's request for disability benefits. (*Id.* at 18-42.)

In reaching the decision, the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. §§ 404.1520(a), 416.920(a).[2] At step one, the ALJ determined that Ms. R had not engaged in substantial gainful activity since December 31, 2021, the alleged disability onset date. (Admin. R. at 23.) At step two, the ALJ found that Ms. R had the following severe impairments: cervical and lumbar degenerative disc disease; fibromyalgia; enhanced physiologic tremors (EPT); mood disorder; anxiety

---

[2] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, at step two of this process the ALJ determines whether the claimant's impairments are severe, and of a duration of at least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, at step four the ALJ must determine the claimant's Residual Functional Capacity (RFC), and whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i–v).

disorder/generalized anxiety disorder (GAD); borderline personality disorder (BPD); and borderline intellectual functioning (BIF). (*Id.* at 24.) The ALJ found all other impairments than those mentioned above to be "non-severe or not medically determinable as they have been responsive to treatment, cause no more minimal vocationally relevant limitations, have not lasted or are not expected to result in more than minimal work-related restrictions for a continuous period of at least 12 months." (*Id.*)

At step three, the ALJ determined that Ms. R did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 26.) In reaching the severity determination, the ALJ examined medical evidence from Dr. Keith Erickson, her treating psychiatrist, and psychiatric treatment providers, Nystrom & Associates. (*Id.* 29–31.) Weighing the evidence as a whole, the ALJ then made the following residual functional capacity ("RFC") determination:

> [C]laimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the occasional climbing, balancing, stooping, kneeling, crouching and crawling; occasional overhead reaching but frequently in all other directions; avoid more than occasional exposure to extreme cold, wetness, humidity, vibration and hazards such as machinery and heights; can make simple work related decisions; can maintain pace in the performance of simple tasks; able to understand and remember simple tasks.

(*Id.* at 30.) The ALJ acknowledged that Ms. R had "numerous mental impairments" including bipolar disorder. (*Id.* at 31; Dkt. 14 at 5.) She experienced a recent manic episode that began four months before her administrative hearing (the first such episode in several years) and ended just a few weeks prior to the hearing. (Admin. R. at 31.) But the ALJ

found the intensity, persistence, and limiting effects of her symptoms to be inconsistent with medical and other evidence in the record. (Admin. R. at 31–39.) After determining Ms. R's RFC, the ALJ found at step four that Ms. R was unable to perform any of her past relevant work as actually or generally performed. (*Id.*)

At step five, the ALJ found that other jobs existed in significant numbers in the national economy that Ms. R, given her age, education, work experience, and RFC, could perform. (*Id.* at 40–41.) Relying on the testimony from the VE, the ALJ found that Ms. R could perform the job requirements of "marker," of which there are 165,175 jobs available nationally; "collator operator," of which there are 30,789 jobs nationally; and "routing clerk," of which there are 122,348 jobs nationally. (*Id.* at 42.) Because the ALJ determined that Ms. R could perform jobs that exist in significant numbers in the national economy, the ALJ concluded that she was not disabled. (*Id.* at 42.)

Ms. R sought review of the ALJ's decision by the Appeals Council, which was denied on September 30, 2025. (*Id.* at 1–7.) Ms. R then filed this action challenging the ALJ's decision. (Dkt. 1.)

## **STANDARD OF REVIEW**

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g). Under this review, the District Court is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a

preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p.

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The decision of the ALJ to deny benefits will not be reversed by the Court "so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

## ANALYSIS

Ms. R contends that the case should be reversed or remanded for further proceedings based on several arguments. She first argues that the ALJ's RFC determination was flawed because he failed to consider the episodic nature of her bipolar disorder and failed to include her need for an emotional support animal. (Dkt. 14, at 7–13, 25–26.) She argues that the ALJ's error in discounting her recent manic episode was outcome determinative and "work preclusive," and that psychotic illnesses with periods of remission do not necessarily establish the cessation of disability. (*Id.* at 8–13; Dkt. 25, at 2–4.) Ms. R also argues that the ALJ erred in failing to articulate the persuasiveness of the medical opinions

of her treating psychiatrist, Dr. Keith Erickson. (Dkt. 14, at 14–20.) Lastly, Ms. R argues that the ALJ failed to incorporate her need for an emotional support animal in the hypothetical question posed to the VE. (*Id.* at 24–26; *see also* Dkt. 25, at 10–11.) The Commissioner argues that the ALJ's decision should be affirmed because he properly evaluated the evidence in determining Ms. R's medical impairments and the RFC, his RFC determination is supported by substantial evidence, and Ms. R's emotional support animal is not a medical necessity. (*See* Dkt. 16.)

## I. RFC Determination

An ALJ's determination of RFC is "a medical question and must be supported by some medical evidence of the claimant's ability to function in the workplace . . . ." *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016).

### A. Bipolar Disorder

Ms. R argues that the ALJ erred in the RFC determination because he failed to consider the episodic nature of her bipolar diagnosis. (Dkt. 14, at 7–13.) She specifically contends that the ALJ impermissibly drew his own inferences from Ms. R's medical history and erred in determining that her mental health improved due to medication. (*Id.* at 8–9; Dkt. 25, at 4–7.) The Court disagrees.

The ALJ concluded, after extensive fact finding, that Ms. R experienced a manic episode lasting from February 2025 to May 2025, had no prior history of mania in the past three years, and that her mood had stabilized due to medication. (Admin. R. at 38.) The medical evidence in the record supports this conclusion. (*Id.* at 1491.) Dr. Erickson, Ms. R's treating psychiatrist, stated that Ms. R was "in a mixed state," with both depressive and

manic or hypomanic symptoms, but that her medication "help[ed] her moods even out a bit," and that she was not currently at risk of suicide or required mental health inpatient treatment. (*Id.*) Although Ms. R's medical history mentions two suicide attempts and a history of self-injurious behavior, there has been no recurrence in the last ten years. (*Id.* at 919, 948, 1059.) Her manic episode was the first in three years. (*Id.* at 81.) During the episode, Dr. Erickson noted in May 2025 that Ms. R denied "current suicidal ideation," and that "the desire for self-harm is not suicidal in nature." (*Id.* at 81, 1492.)

As such, the record shows that the ALJ did not discount the episodic nature of Ms. R's bipolar diagnosis. Further, the ALJ's conclusion that Ms. R responded positively to medication was not an impermissible inference, but a conclusion supported by the medical evidence.

**B. Emotional Support Animal**

Ms. R also argues that the RFC should have included her medically documented need for an emotional support animal ("ESA") in a work setting. She asserts that the ESA is a "therapeutic intervention." (Dkt. 14, at 25–27.) The Commissioner argues that medical evidence does not support Ms. R's position that the ESA is a medical necessity. (Dkt. 21, at 15–17.)

The Eighth Circuit has not yet reached the issue of whether an ALJ must include a service dog[3] as a limitation in an RFC assessment. But other courts have persuasively held

[3] Courts have used the term "service dog" and rely on the Americans with Disabilities Act's definition of a service dog, and not the term "emotional support animal." Because the parties' arguments turn on whether Ms. R's dog is a medical necessity to

that an ALJ must include a service dog in the RFC assessment when the dog is a "medical necessity." *Joshua D. v. Bisignano*, No. C24-2056-LTS-KEM, 2026 WL 777448, at *12 (N.D. Iowa Mar. 19, 2026); *Kimberly S. v. Comm'r, Soc. Sec.*, No. CV EA-23-1404, 2024 WL 5007372, at *4 (D. Md. Dec. 3, 2024); *Tiffany B. v. Kijakazi*, No. 120CV02696DLPJMS, 2022 WL 224817, at *6 (S.D. Ind. Jan. 26, 2022); *Cordell v. Saul*, No. 3:19-CV-47, 2019 WL 6257994, at *19 (N.D.W. Va. Nov. 4, 2019), *R&R adopted sub nom. Cordell v. Comm'r of Soc. Sec.*, No. 3:19-CV-47, 2019 WL 6255498 (N.D.W. Va. Nov. 22, 2019). A service dog is a medical necessity if: "(1) a medical provider recommended use of the service dog in a workplace function and (2) the dog was brought to medical appointments or otherwise utilized in everyday life." *Joshua D.*, 2026 WL 777448, at *12 (citing *Cruz v. Comm'r of Soc. Sec.*, 406 F. Supp. 3d 1337, 1346–47 (M.D. Fla. 2019) (compiling cases)); *see also McGehee v. Berryhill*, 386 F. Supp. 3d 80, 87 (D. Mass. 2019). If a service dog enables a claimant "to perform any work-related functions that she would otherwise be unable to do without the dog," then the service dog is medically necessary for the purpose of RFC assessment. *Kimberly S.*, 2024 WL 5007372, at *4.

Courts require more than "[a] single letter recommending use of a service dog" to show medical necessity. *Trea N. L. v. O'Malley*, No. 4:23-CV-04064, 2025 WL 2429032, at *6 (S.D. Tex. Mar. 20, 2025); *Griffin v. Soc. Sec. Admin., Comm'r*, 842 F. App'x 339, 342 (11th Cir. 2021); *but see Rentfro v. Colvin*, No. 14-CV-3015, 2015 WL 12868081, at *13 (C.D. Ill. Oct. 21, 2015), *R&R adopted*, No. 14-CV-3015, 2016 WL 3360463 (C.D. Ill.

---

support a workplace limitation, the Court uses the term "service dog" throughout this Order consistent with the terminology used by other courts.

June 16, 2016). Rather, claimants must submit an assessment that describes how they would require the assistance of a service dog in a work setting. *See Payano v. Colvin*, No. 2:15-cv-294, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017).

Under this standard, Ms. R's argument that her service dog is a medical necessity is unavailing. (Dkt. 14, at 24–25.) It is true that Ms. R's service dog helps with her emotional wellbeing. (Admin. R. at 126.) But no medical provider has determined that a service dog is a medical necessity for purposes of employment. Nor has Ms. R claimed that she was unable to perform any work-related functions without the use of a service dog. As such, the Court finds that in this specific case, a service dog is not a medical necessity for the purpose of Ms. R's RFC determination. Thus, the ALJ did not err in his RFC determination.

## II. Substantial Evidence

Ms. R also argues that the ALJ's failure to articulate the persuasiveness of medical opinions is legal error. (Dkt. 14, at 14–17.) Ms. R asserts the ALJ's analysis is deficient because the ALJ cherry-picked from Dr. Erickson's treatment notes while ignoring his medical source statements and substituted the ALJ's own judgment that Ms. R's mental health was improving. (*Id.* at 17–18; Dkt. 25, at 7–8.) Ms. R asserts that the ALJ should have placed weight on Dr. Erickson's statements that Ms. R is unable to "maintain work at a gainful level," and that "being able to stay at work" would be a challenge for her because she has a limited emotional reserve. (Dkt. 14, at 14–17; Admin. R. at 1722–23.)

The Court disagrees. An ALJ's allocation of persuasive value is "legally sufficient . . . where they explain supportability and consistency in their decision." *Andrea M. Y. v. Dudek*, No. 23-CV-3813 (DLM), 2025 WL 684935, at *4 (D. Minn. Mar. 4, 2025). An

ALJ is not required to accept the entirety of a medical opinion as relevant or persuasive. *Id.*

Contrary to Ms. R's assertions, the ALJ's supportability and consistency analyses are not deficient. The ALJ considered Ms. R's medical history from December 2022 to May 2025 and found that the record did not support mental health decompensation before February 2025. (Admin. R. at 38–39.) The ALJ found Dr. Erickson's opinion to be unpersuasive because his treatment notes did not support his opinion. (*Id.*) Specifically, Dr. Erickson opined that Ms. R had marked limitations in understanding, remembering, and carrying out detailed instructions, and moderate limitation in carrying out simple instructions and the ability to make judgments on simple work-related decisions. (*Id.* at 1722-23.) He also opined that Ms. R had marked limitations in responding to work pressures and changes in a routine work setting. (*Id.*) Dr. Erickson concluded that Ms. R has limited emotional reserve, that changes in routine and work stress would be difficult for her, and that she cannot maintain work at a gainful level. (*Id.*) But in his treatment notes, Dr. Erickson noted that Ms. R "appear[ed] to be in a mixed state endorsing both depressive and manic/hypomanic symptoms . . . ." (*Id.* at 1491.) Her medication helped even out her mood, and she was not at risk of suicide or self-injurious behavior. (*Id.* at 1493.) The ALJ found Dr. Erickson's conclusions inconsistent with his treatment notes that showed that Ms. R was responding well to psychotherapy and medication. (*Id.* at 39.)

The ALJ also considered State Agency findings on Ms. R's medical history. (*Id.* at 39, 125–43.) The State Agency findings supported Ms. R's bipolar diagnosis but otherwise did not reflect mental health decompensation that affected her functional abilities. (*Id.* at

126–27.) The State Agency psychologist opined that she could understand and follow directions and handle the stress of an entry level working position. (*Id.* at 129.) The ALJ then weighed Dr. Erickson's opinion, his treatment notes, and the State Agency findings and concluded that Ms. R "responded well to individual psychotherapy" and the record did not support mental health decompensation that justified work-related mental limitations. (*Id*. at 38–39.)

The Court cannot reverse or remand because the ALJ did not give some of the medical opinions more weight than others, as Ms. R contends. *See Andrea M. Y.*, 2025 WL 684935, at *7 ("[G]overning regulations do not require that an ALJ give specific weight to any medical opinion or findings."). Nor is the Court required to reverse or remand because it disagrees with the ALJ's conclusions on the persuasive value of specific pieces of medical evidence in the record. *Id.* at *6. Rather, the only question for the Court in reviewing the ALJ's findings for legal sufficiency is whether the ALJ adequately discussed supportability and consistency. The Court finds that the ALJ did so here, and Ms. R's arguments fail.

**III. Hypothetical Questions to the VE**

Lastly, Ms. R argues that the ALJ's failure to include her need for a service dog in the hypothetical question to the VE was error. (Dkt. 14, at 25–27; Dkt. 25, at 9–11.) The Court disagrees. Testimony from the VE in response to a hypothetical question that includes a claimant's impairments substantially supported by the record as a whole can be the proper basis of the ALJ finding that a claimant is not disabled. *Lacroix v. Barnhar*t, 465 F.3d 881, 889 (8th Cir. 2006). As discussed above, the ALJ properly concluded that

the service dog was not an RFC limitation based on the record as a whole. The ALJ thus did not err in omitting the service dog as an impairment in the hypothetical question to the VE. This aspect of Ms. R's claim therefore also fails.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Ms. R's request for relief (Dkt. 14) is **DENIED**;
2. The Commissioner's request for relief (Dkt. 21) is **GRANTED**; and
3. This matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 6, 2026

*s/ Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge